# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIA RICHARD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18 C 06517 |
| BOYCE WATKINS and LAWRENCE WATKINS, | ) Judge Joan H. Lefkow |
| Defendants. | ) |

## OPINION AND ORDER

Defendants Boyce Watkins and Lawrence Watkins move to dismiss Plaintiff Maria Richard's Second Amended Complaint. The motion [46] is granted in part and denied in part.[1]

## BACKGROUND[2]

In 2012, Maria Richard began working as a freelance blogger for Your Black World Network LLC, a company owned by Boyce Watkins that created online content tailored to the African-American community. (Dkt. 43 ¶ 6.) In September of that year, Richard also began managing Boyce's career.[3] (*Id.* ¶ 8.) In 2015, Richard and Boyce decided to form a business venture that would provide clients online training in finance and entrepreneurship. (*Id.* ¶¶ 9-10.)

---

[1] This court has jurisdiction under 28 U.S.C. § 1332 because Richard alleges she is a citizen of Alabama and defendants are citizens of Illinois. Venue is proper under 28 U.S.C. § 1391(b) because defendants reside in this district and plaintiff's claims arise from events that occurred in this district.

[2] The following recitation of facts is taken from the well-pleaded allegations in Richard's second amended complaint, which facts are presumed true for purposes of this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

[3] The court will generally refer to each defendant by his first name to distinguish them from each other.

They called the venture the "Black Wealth Bootcamp," and accepted their first cohort of students in July 2015. (*Id.* at ¶ 11.)

Richard, Boyce, and Boyce's brother Lawrence formed an Illinois limited liability company called The Black Wealth Bootcamp LLC in February 2016. (*Id*. ¶¶ 12-15.) Each of them held a one-third equity interest in the LLC, although they agreed that profits would be divided with 72% to Boyce, 18% to Richard, and 10% to Lawrence. (*Id*. ¶ 13.) The parties drafted an operating agreement for the LLC, but no written agreement was ever signed. (*Id*. ¶14.)

Richard had a number of responsibilities with the Bootcamp, including "managing the online platforms, assisting with selling the online offerings, enrolling participants, resolving customer service issues, and creating the PowerPoint presentations" for lectures that Boyce gave. (*Id*. ¶ 15.) She invested considerable time in the business and fulfilled all of her agreed-upon obligations. (*Id.* ¶¶ 15, 39.)

Roughly contemporaneously with the start of the Bootcamp, in 2015 and 2016, the Watkins brothers also launched a number of ventures on their own that competed with the Bootcamp. (*Id*. ¶¶ 18, 19.) These included The Black Business School, The Black Wealth Academy, The Black Wealth Calendar, and others. (*Id.*) The Bootcamp's classes were added to The Black Business School's platform. (*Id.*) In 2016, Richard complained to Boyce about confusion he was creating with these similarly-named business ventures. (*Id.* ¶¶ 19, 20.)

The Bootcamp was initially profitable. (*Id.* ¶ 16.) In 2017, however, the Watkins brothers stripped it of its assets and used the Bootcamp student list to recruit participants to their other ventures. (*Id*. ¶¶ 16, 21-22.) The Watkins brothers spent Bootcamp money on Facebook advertisements for their other ventures, outspending advertisements for the Bootcamp by almost 7000%. (*Id*. ¶ 24.) Throughout this time, they maintained complete control over the financial

accounting for both the Bootcamp and their other ventures and did not pay Richard her share of the profits for the Bootcamp. (*Id*. ¶¶ 17, 25.)

In addition to the problems with the Bootcamp, Richard also raises claims related to a video she posted on YouTube in December 2015. On Boyce's instruction, Richard posted a video on Boyce's YouTube channel criticizing a non-party named Umar Johnson. (*Id*. ¶¶ 28-30.) Boyce subsequently posted two videos, one in December 2017 and one in December 2018, claiming that "he 'did not give [Richard] the green light' to make the video about Umar Johnson" and "Maria attacked Umar on my channel." (*Id*. ¶¶ 30, 32.) Boyce also posted a comment on YouTube related to his December 2018 video in which he again said Richard "attack[ed]" Umar Johnson and that he "had no idea she was using [Boyce's] YouTube channel to launch a personal vendetta." (*Id*. ¶ 34.) Finally, in January 2019, Boyce wrote in a YouTube comment under the alias "Listory 101" that he "did not want to work with her [i.e., Richard] anymore, not only because he was upset about her possibly cheating, but also because he felt she was not doing her job at an adequate level and was not a good business partner." (*Id*. ¶ 33.)

Richard sued, bringing claims of breach of contract, unjust enrichment, breach of fiduciary duty, and conversion against both brothers. Richard also bring claims of defamation *per se* and *per quod* against Boyce alone. The Watkins brothers move to dismiss Richard's complaint in its entirety for failing to state a claim.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences therefrom in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th

Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); see also *Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

**ANALYSIS**

**I.    Count I: Breach of Contract**

Richard's first claim is for breach of contract. "To state a claim for breach of contract under Illinois law, a plaintiff must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Jokich* v. *Rush Univ. Med. Ctr.*, No. 18 C 7885, 2019 WL 1168106, at *5 (N.D. Ill. March 13, 2019) (quoting *Reger Dev., LLC* v. *Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)). The elements are the same whether the contract is written or oral. *Mission Measurement Corp.* v. *Blackbaud, Inc.*, 287 F. Supp. 3d. 697, 715 (N.D. Ill. 2017) (citing *Sheth* v. *SAB Tool Supply Co.*, 990 N.E.2d 738, 754, 2013 IL App (1st) 110156.

Defendants argue, in a generally conclusional fashion, that Richard has failed to allege any of these elements. (Dkt. 46 at 5.) To the contrary, Richard alleges an oral agreement to form

a business venture and split the profits in a specific way, an allegation whose plausibility is bolstered by the facts that the parties formed an LLC to house the venture, pursued the venture at significant length, and no other agreement purportedly governs the venture. Richard further alleges that she performed her obligations under the oral agreement, including "managing online platforms, assisting with selling the online offerings, enrolling participants, resolving customer service issues, and creating the PowerPoint presentations for all the lectures presented by Defendant Boyce." (Dkt. 43 ¶¶ 15, 39.) She also alleges a breach in that defendants refused to pay her share of the profits. Those allegations are sufficient to state a claim for breach of contract.

## II.  Count II: Unjust Enrichment

Richard's second claim is for unjust enrichment. "In Illinois, '[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary* v. *Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145 (Ill. 1989)). "[T]he plaintiff must show either that (1) a benefit that should have been given to the plaintiff was mistakenly given to the defendant instead; (2) the defendant obtained a benefit through some type of wrongful conduct; or (3) the plaintiff had a better claim to the benefit than the defendant for some other reason." *Axis Hospitality, Inc.* v. *Hanson*, No. 08 C 7212, 2010 WL 431662, at *6 (N.D. Ill. Feb. 1, 2010) (citing *HPI Health Care Servs.*, 545 N.E.2d at 679).

Defendants again argue conclusionally that Richard's complaint fails to plead the elements of an unjust enrichment claim. (Dkt. 46 at 7.) As indicated above, federal procedure

does not require pleading elements of a cause of action but only facts sufficient to permit an inference that the elements could be established. Richard's unjust enrichment claim is essentially that defendants wrongfully obtained a benefit by withholding her agreed-upon share of profits. (Dkt. 43 at 43.) The claim thus is pleaded as an alternative to her breach of contract claim, as is proper. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense"); *Miszczyszyn* v. *JPMorgan Chase Bank, N.A.*, No. 18-CV-3633, 2019 WL 1254912, at *4 (N.D. Ill. Mar. 19, 2019). The motion to dismiss Count II is denied.

### III. Count III: Breach of Fiduciary Duty

Richard's third claim is that defendants breached fiduciary duties owed to her as co-members of The Black Wealth Bootcamp LLC by dissipating the company's assets and usurping corporate opportunities. (Dkt. 43 at 8.) Under Illinois law, to establish a breach of fiduciary duty claim, Richard must show that (1) a fiduciary duty existed, (2) the duty was breached; and (3) the breach proximately caused damages. *Gross* v. *Town of Cicero,* 619 F.3d 697, 709 (7th Cir. 2010).

Defendants first argue that Richard has failed to plead sufficient facts showing defendants owed her fiduciary duties. (Dkt. 46 at 6.) But the allegation that all parties were co-members of an Illinois LLC is sufficient. Illinois law provides that members of an LLC owe each other and the company duties of loyalty and care. 805 Ill. Comp. Stat. Ann. § 180/15-3(a).

Defendants next argue that they could not have violated those duties by forming competing ventures when such ventures were launched "within months of creating Bootcamp." (Dkt. 46 at 6.) This alleged timing makes no difference to liability. *See id.* § 180/15-3(b)(3) (duty

6

of loyalty includes obligation "to refrain from competing with the company in the conduct of the company's business before the dissolution of the company"); *Mullaney Wells & Co.* v. *Savage*, 402 N.E.2d 574, 580, 78 Ill. 2d. 534 (Ill. 1980) ("[I]t is a breach of fiduciary obligation for a person to seize for his own advantage a business opportunity which rightfully belongs to the corporation by which he is employed"). Thus, defendants' motion to dismiss Count III is denied.

## IV.   Count IV: Conversion

Richard's fourth claim is for conversion. To establish a claim for conversion a plaintiff must prove (1) her right to the subject property, (2) her unconditional right to immediate possession of the property, (3) her demand for possession, and (4) the defendant's wrongful and unauthorized assumption of control or ownership over the property. *Loman* v. *Freeman,* 890 N.E.2d 446, 461, 229 Ill. 2d 104 (Ill. 2008). When money is at issue, an action for conversion may be maintained "where the converted funds are capable of being described, identified, or segregated in a specific manner." *Bill Marek's The Competitive Edge, Inc.* v. *Mickelson Grp., Inc.,* 806 N.E.2d 280, 287, 346 Ill. App. 3d 996 (Ill. App. Ct. 2004).

The damages Richard seeks via this claim are the same as those she seeks in her first three claims: namely, her putative share of the profits of the company. (Dkt. 43 at 8-9.) Her conversion claim thus is duplicative of her breach of contract and unjust enrichment claims, and is subject to dismissal on that basis. *TABFG, LLC* v. *Pfeil*, No. 08 C 6979, 2009 WL 3617514, at *4 (N.D. Ill. Oct. 28, 2009).

Moreover, Richard's complaint does not plausibly allege that she has an immediate right to the profits. She does not allege, for example, that the members of the LLC agreed to distribute profits at any certain time or that such a distribution actually occurred. *Id.* (dismissing conversion claim where plaintiff alleged that profits "should have been distributed" pursuant to a contract).

Absent such allegations, there is no reason to believe that the LLC's profits do not remain properly held by the company. Therefore, defendants' motion to dismiss Count IV is granted.

## V.     Counts V & VI: Defamation *Per Se* & *Per Quod*

Finally, Richard brings claims of defamation *per se* and *per quod* against Boyce. To establish a claim for defamation, a plaintiff must prove "the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC* v. *Specialty Publ'g Co.,* 852 N.E.2d 825, 839, 221 Ill. 2d 558 (Ill. 2006). A statement is defamatory *per se* where its harm is "obvious and apparent on its face." *Id.*; *Eberhardt* v. *Morgan Stanley Dean Witter Trust FSB*, No. 00 C 3303, 2001 WL 111024 at *2-3 (N.D. Ill. February 2, 2001). There are five categories of statements that are considered defamatory *per se* under Illinois law: statements that impute "(1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business." *Muzikowski* v. *Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) (citing *Bryson* v. *News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214-15, 174 Ill. 2d. 77 (Ill. 1996)).

A claim of defamation *per quod*, in contrast, requires the plaintiff to plead extrinsic facts to explain a statement's defamatory meaning, as well as special damages. *Doctor's Data, Inc.* v. *Barrett*, No. 10 C 03795, 2011 WL 5903508, at *9 (N.D. Ill. Nov. 22, 2011) (citing *Bryson*, 672 N.E.2d at 1229). "General allegations such as damages to one's health or reputation, economic loss, and emotional distress are insufficient." *Becker* v. *Zellner*, 684 N.E.2d 1378, 1387, 292 Ill. App. 3d 116 (Ill. App. Ct. 2006).

### A. Defamation *Per Se*

Richard alleges that Boyce defamed her in a comment posted to YouTube under the alias "Listory 101," in which he referred to himself in the third-person, stating he "did not want to work with her [Richard] anymore, not only because he was upset about her possibly cheating, but also because he felt she was not doing her job at an adequate level and was not a good business partner." (Dkt. 43 at 6.) Richard claims this statement was defamatory *per se* both because it contains an allegation of adultery or fornication and because it harms her in her trade, profession, or business. (Dkt. 56 at 8.)

Boyce does not challenge the notion that the statement is defamatory but argues that Richard's complaint does not plausibly allege that "Listory 101" is Boyce's alias.[4] (Dkt. 46 at 10.)

The statement in question indicates on its face that it was made by a "business partner" of Richard's, which substantially limits the universe of potential speakers, and is contemporaneous with Boyce's posting of YouTube videos in which—Boyce does not contest—he discussed his personal disputes with Richard. (*See* Dkt. 43 at ¶¶ 31-33.) Furthermore, Boyce's motion does not expressly deny that Listory 101 is his alias. Drawing all reasonable inferences in Richard's favor, she has sufficiently alleged that Boyce is responsible for the comment. Thus the motion to dismiss Count VI is denied.

---

[4] In his reply brief, Boyce also argues that these statements are susceptible to an innocent, non-defamatory interpretation. (Dkt. 59 at 7.) Arguments raised for the first time in a reply are forfeited. *Amerson* v. *Farrey*, 492 F.3d 848, 852 (7th Cir. 2007).

B.  **Defamation *Per Quod***

In Count V, Richard brings a claim of defamation *per quod* against Boyce for a December 2018 YouTube video in which he disavowed authorizing her to post a video critical of a non-party named Umar Johnson on his (Boyce's) YouTube channel. (Dkt. 43 at 5-6, 9.)

As stated above, a plaintiff bringing a claim of defamation *per quod* must plead extrinsic facts "explaining [the] defamatory meaning" of the statement in question and plead "special damages with particularity." *Doctor's Data*, 2011 WL 5903508, at *9. Boyce argues that Richard's claim fails on these grounds, and that it is time-barred. (Dkt. 46 at 8-10.)

Richard provides no description of the video she posted related to Umar Johnson other than quoting statements from Boyce that it was an "attack video."[5] (Dkt. 43 at 6.) Richard also provides no description of how Boyce's alleged disavowal of the video was received by his audience other than stating his disavowals in YouTube videos have been viewed over 100,000 times. (Dkt. 56 at 7; dkt. 43 at 9.) With respect to damages, Richard states only that "[a]s a direct and proximate result" of Boyce's statements, her "reputation has been greatly damaged" and she has "suffered substantial financial damages" in excess of three million dollars. (Dkt. 43 at 9.)

Richard's allegations do not make clear how Boyce's alleged statements harmed her reputation—in other words, why it matters whether or not he disavowed her putative attack video. *See Anderson* v. *Vanden Dorpel*, 667 N.E.2d 1296, 1303, 172 Ill. 2d 399, 416 (Ill. App. Ct. 1996) (dismissing defamation *per quod* claim where plaintiff pleaded "no extrinsic facts establishing that [defendant's] alleged comment was interpreted as being defamatory"). Furthermore, Richard's conclusional allegation that she has suffered substantial financial damages does not meet the special pleading requirement of a defamation *per quod* claim.

---

[5] Richard's complaint also contains a link to the video, which is approximately fifteen minutes long. The court will not take upon itself the obligation to watch the video and interpret its import.

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 853 N.E.2d 770, 780, 367 Ill. App. 3d 48 (Ill. App. Ct. 2006) (damage allegations too general where plaintiffs claimed advertisement published in the Chicago Sun-Times "humiliated and embarrassed" them), *aff'd in relevant part,* 882 N.E.2d 1011, 227 Ill. 2d 381 (Ill. 2008); *Doctor's Data*, 2011 WL 5903508 (damage allegations too general where plaintiff alleged that defendant's statements damaged its business, but did not allege it actually lost customers); *Downers Grove Volkswagen, Inc.* v. *Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 38, 190 Ill. App. 3d 524 (Ill. App. Ct. 1989) (same). Thus the motion to dismiss Count V is granted.

For completeness, in the event Richard attempts to replead this claim, the court concludes that it is also untimely to the extent it is based on Boyce's statements in a December 2017 YouTube video. Defamation claims in Illinois are subject to a one-year statute of limitations.[6] 735 ILCS 5/13-201. The operative complaint in this case was filed in April 2019. (Dkt. 43.) Richard argues that her defamation claim relates back to her original complaint, filed in September 2018, but the relation-back doctrine requires that the claim at issue arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Richard's original complaint solely addresses defendants' alleged failure to split the profits of the Bootcamp with her; it contains no defamation claim or mention of the December 2017 video. (*See* dkt. 1.) The issues related to the Bootcamp enterprise

---

[6] While the parties do not address this issue, it appears that a YouTube video is deemed published for purposes of the statute on the date it is first posted, despite the fact that it remains available for viewing after that date. "[W]here there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Troya Int'l, Ltd.* v. *Bird-X, Inc.*, No. 15 C 9785, 2017 WL 6059804, at *14 (N.D. Ill. Dec. 7, 2017) (quoting *Blair* v. *Nevada Landing P'ship,* 859 N.E.2d, 1188, 1193, 369 Ill. App. 3d 318 (Ill. App. Ct. 2006)).

and the issues related to the defamation claim do not arise out of the same conduct, transaction or occurrence.

On the other hand, Richard's defamation claim is based in part on a December 2018 comment Boyce allegedly posted on YouTube disavowing her "attack video." (Dkt. 43 at 6.) That aspect of the claim is timely, although for the reasons stated above it is deficient in substance, and so is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts I–III and VI is denied. The motion to dismiss Counts IV and V is granted, without prejudice to repleading.

Date: December 3, 2019

_____
U.S. District Judge Joan H. Lefkow